**RECORD NO. 11-5141**

ORAL ARGUMENT NOT HELD

In The

# United States Court of Appeals
### For The District of Columbia Circuit

## OLZIE PERRY,

*Plaintiff - Appellant,*

**v.**

## ERIC K. SHINSEKI,
### Secretary, U.S. Department of Veterans Affairs,

*Defendant - Appellee.*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

———————

## APPELLANT'S PETITION FOR REHEARING AND
## SUGGESTION FOR REHEARING *EN BANC*

———————

*Michael G. Kane                           David R. Cashdan
CASHDAN & KANE, PLLC              CASHDAN & KANE, PLLC
324 East Broad Street                    1150 Conneticut Avenue, N.W.
Westfield, New Jersey 07090        Washington, D.C. 20036
(908) 264-9331                              (202) 862-4330

*Counsel for Appellant*                 *Counsel for Appellant*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..............................................................................ii

I.     INTRODUCTION AND RULE 40(a)(2) STATEMENT OF PURPOSE................................................................................. 1

II.    STATEMENT OF THE FACTS ............................................................. 2

III.   ARGUMENT............................................................................................ 5

       Preference For Another Applicant Because of A Discriminatory Criterion Is Illegal Under Title VII.  But The Panel Did Not Consider This Argument ........................................................................ 5

CERTIFICATE OF FILING AND SERVICE

ADDENDUM

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aka v. Washington Hosp. Ctr.*,
  124 F.3d 1302 (D.C. Cir. 1997) ........................................................... 15

*\*Griggs v. Duke Power Co.*,
  401 U.S. 424, 91 S. Ct. 849, 28 L. Ed. 2d 158 (1971) ........................... 6

*McDonald v. Santa Fe Trail Transp. Co.*,
  427 U.S. 273, 96 S. Ct. 2574, 49 L. Ed. 2d 493 (1976) ........................ 6

*Reeves v. Sanderson Plumbing Products, Inc.*,
  530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) ..................... 6

**STATUTES**

29 U.S.C. § 633a ...................................................................................... 2

42 U.S.C. § 2000e-16................................................................................ 2

*\*Denotes Authorities Chiefly Relied Upon*

**UNITED STATES COURT OF APPEALS
DISTRICT OF COLUMBIA CIRCUIT**

| | |
|---|---|
| **OLZIE PERRY** | ) |
| Appellant | ) |
| | ) September Term, 2010 |
| v. | ) No. 11-5141 |
| | ) |
| **ERIC K. SHINSEKI, SECRETARY,** | ) |
| **U.S.  DEPARTMENT OF** | ) |
| **VETERANS AFFAIRS** | ) |
| Appellee | ) |
| _____ | ) |

**APPELLANT'S PETITION FOR REHEARING AND
SUGGESTION FOR REHEARING *EN BANC***

## I.  INTRODUCTION AND RULE 40(a)(2) STATEMENT OF PURPOSE

The Panel issued a Per Curiam decision affirming the district court's grant of summary judgment on African-American, female Appellant Olzie Perry's claims of race, age and gender discrimination in the selection of Don Murphy for the position of Chief of Operations in the National Cemetery Administration, Memorial Programs Service of the U.S. Department of Veterans Affairs.

Appellant respectfully suggests that rehearing or rehearing en banc is appropriate because the Panel overlooked or misapprehended Ms. Perry's arguments that the VA preferred Mr. Murphy because it <u>preferred</u> <u>his</u> race, age or sex as opposed to her alternative argument that the VA discriminated

1

against her because of Ms. Perry's race, age or sex.  In its decision, the Panel

expressly limited its analysis to whether the VA was motivated by Ms.

Perry's age, race or sex.  See, Panel decision at 2.

Ms. Perry had expressly argued alternative theories for liability in her

Complaint:

Ms. Perry alleged on her race claim that

> Defendant discriminated against Ms. Perry when it refused to hire her for the position of Chief of Operations because it preferred Mr. Murphy because of his race and/or, in the alternative, it rejected Ms. Perry because of her race all in violation of the Civil Rights Act of 1991, 42 U.S.C. § 2000e-16, et seq.  [emphasis added].

The gender and age claims were similarly pled with the gender claim

brought under 42 U.S.C. § 2000e-16 (Employment by federal government)

and age claim being brought under the federal sector provision 29 U.S.C.

§ 633a.

Because the Panel overlooked or misapprehended the "preference"

argument in Ms. Perry's case, rehearing and/or rehearing en banc should be

granted.

## II.    STATEMENT OF THE FACTS

David Schettler (white male), who had become Acting Director of the

Memorial Programs Service (MPS), within the National Cemetery

2

Administration of the VA, hired Lindee Lenox (white female) to be the Chief of Operations for the Government Headstone and Marker Program – a program that provides more than 350,000 headstones and markers annually to mark the graves of veterans and eligible family members – in or about June 2001.[1]  Mr. Schettler had previously held the Chief position.

By 2005, it was known that the Chief position would be available again.  Ms. Lenox had become Director and the Chief position had been vacant for about two years.

Ms. Perry mentioned to Ms. Lenox that she planned on applying for the Chief of Operations position in her annual review meeting on December 9, 2005.  In response, Ms. Lenox asked Ms. Perry how many years she had until retirement.  When Ms. Perry asked why she wanted to know, Ms. Lenox responded that it was for no particular reason.[2]  Ms. Lenox advised Ms. Perry that Ms. Perry she was best suited for the position she was in.[3]

The Chief of Operations position was posted in February 2006 (formerly called Program Analysis Officer GS-0343-14) and Ms. Perry applied.  Ms. Lenox would be the selecting official.[4]

---

[1] JA 571:  Lenox Dep.
[2] JA 277: Perry Declaration.
[3] JA 493, 494, 499.
[4] JA 293-298.

Ms. Perry submitted an application as did Don Murphy (white male, age 41) and several other applicants.[5] These applications were then reviewed by the Defendant's Human Resources Specialist Rhonika Howard for purposes of determining who met the minimum qualifications. Mr. Murphy and Ms. Perry both met the minimum qualifications and Ms. Howard gave the certificates back to Ms. Lenox.[6]

Ms. Lenox then asked Mr. Schettler to serve as the "subject matter expert."[7] Allegedly, Mr. Schettler was supposed to review the applications and determine who was "best qualified." According to Mr. Schettler's notes he selected both Ms. Perry and Mr. Murphy as best qualified, as well as Gina White (white female age 42) and Wanza Lewis (African-American female age 51).[8]

Ms. Lenox then convened a panel of three people, George Eisenbach (white male), Deanna Wilson (white female) and Jimma Elliott-Stevens (African-American female) to interview the best qualified.

The panel advised Ms. Lenox to hire Ms. Lewis, who was the other African-American female besides Ms. Perry, because, according to the panel, she was extremely well versed in VA's Headstone and Marker program and

---

[5] JA 300-335: Perry App.  JA 209-219:  Murphy App.
[6] JA 535-536, 542, 545-546: Howard Deposition.
[7] JA 540-541.
[8] JA 372-373: BQ List, JA 347-357:FQL points.

had a management style favored by the panel, *i.e.* she was a "people person", among other things.[9]

The panel singled out Mr. Murphy for criticism. Speaking for the panel, Ms. Wilson observed that

> …[Mr. Murphy] did not seem to have the management experience or ease with the situations that the others did. Also, his answers were not as strong as the others on several of the questions.[10]

The other panel members agreed with these assessments of Mr. Murphy.[11]

Ms. Lenox interviewed neither Ms. Lewis nor Ms. White. Instead, she selected Mr. Murphy.

Ms. Elliot-Stevens expressed shock at the Murphy selection.[12] Mr. Eisenbach expressed surprise at Ms. Lenox' selection of Murphy.[13]

## III.   ARGUMENT

**Preference For Another Applicant Because of A Discriminatory Criterion Is Illegal Under Title VII. But The Panel Did Not Consider This Argument.**

Federal law prohibits discrimination whether it is expressed as affection for someone or animosity against another. The question is whether there is

---

[9] JA 420, 421.

[10] JA 420.

[11] JA 586: Elliot-Stevens Dep.; JA 602-603 Eisenbach.

[12] JA 592: Elliot-Stevens Dep.

[13] JA 600-601.

"evidence that the plaintiff was rejected, *or someone else was preferred*, for a legitimate, nondiscriminatory reason." *Reeves*, 530 U.S. at 142 (emphasis added). *McDonald v. Santa Fe Trail Transp. Co*., 427 U.S. 273, 279 (U.S. 1976) (discriminatory preference is forbidden).

It is important to note that Ms. Perry in addition to and in alternative to discrimination against her expressly alleged that a factor in the selection of Murphy may have been Murphy's age, gender and/or race. Ms. Perry argued this in her opening brief at pages 24-25.

This is significant because it means that Ms. Perry can prevail even if she does not show "but for" the discrimination, she would have gotten the Chief's job. Assuming Ms. Perry was to show a violation based on a preference for Murphy because of his race, gender and/or age, liability would attach with the only question being one of appropriate remedy based on the causative nexus found.

The Court did not consider this argument as indicated by the fact that the Panel held that "nothing in the record suggests that Perry's age, race, or sex played any role whatsoever … ." Panel Opinion at 2 (emphasis added). But the Panel did not consider whether Murphy's age, race or sex played any role whatsoever. *Griggs v. Duke Power Co.*, 401 U.S. 424, 431, 91 S. Ct. 849, 853, 28 L. Ed. 2d 158 (U.S. 1971) ("Discriminatory preference for any

group, minority or majority, is precisely and only what Congress has proscribed.")

The VA in selecting Murphy rejected not just Ms. Perry but also Ms. Lewis, who is African-American, and was recommended by the Panel. Ms. White, who Ms. Lenox rejected, is a female as well. These factors suggest that Mr. Murphy was favored in significant part because of his race, age, or sex.

In addition, the following facts could have led a reasonable fact-finder to conclude that the VA preferred Mr. Murphy because of his race, age or sex:

Ms. Lenox' comments to Ms. Perry when she inquired about the Chief's job would suggest to the fact-finder that Mr. Murphy was preferred for discriminatory reasons and raises an inference of discrimination.[14]

In the district court, the Agency was clearly "dissembling" when it asserted that Mr. Schettler's FQL assessment was independently reviewed by Wayne Simpson at the time of the actual selection prior to the interviews.

In fact, there was no contemporaneous independent review, which Ms. Perry conclusively showed in her opposition brief to the district court.[15]

_____

[14] JA 493-494, 499.
[15] JA 269-272.

There is a fact issue regarding the "[Ms. Perry] was not recommended by the interview panel" reason because Mr. Murphy was not recommended by the panel yet Ms. Lenox selected him for the job.

The Defendant's HR Specialist confirmed that this was a problem for the Agency.  Ms. Howard testified that Ms. Lenox' claim that she did not select Ms. Perry because the panel did not recommend her was not a relevant consideration because the Panel also did not recommend Mr. Murphy yet Ms. Lenox selected him.[16]

Mr. Murphy scored lower than Ms. White.  Even if one were to apply the incorrect totals the Agency advanced in its district court brief, Mr. Murphy should still have been eliminated because he came in second to Ms. White under these incorrect totals (65.3 v. 61.2).   In fact, under these incorrect totals, Mr. Murphy was numerically closer to Ms. Perry than he was to Ms. White (61.2 v. 57.8).[17]

Furthermore, the jury could discredit the relevance of the "lowest score" reason because, according to Rhonika Howard, who was the HR Specialist on the Chief position, there "wouldn't have been any purpose in

---

[16] JA 559-560:  Howard Dep.
[17]  JA 278: Perry calculation.

[Ms. Lenox] looking at the numbers" because there is no qualitative difference within the B[est] Q[ualified.[18]

In addition, there are fact issues concerning the alleged reasons for the selection of Mr. Murphy. In its brief to the EEOC, the Agency conceded that it selected Mr. Murphy for "largely subjective" reasons, which means that the Court should be very skeptical of them.[19]

In her original memo, Ms. Lenox listed as the first item in Mr. Murphy's favor his alleged "clear understanding of the Information Technology systems that we use to perform our work."[20]

Ms. Lenox was likely tying this alleged talent to KSAO ("knowledge, skills, abilities and other characteristics") number 2 which was the only part of the job announcement that referenced IT. A favorable reading of this job requirement is that the IT skill is secondary to the supervisory experience. A jury could infer pretext because Mr. Murphy actually received a three for this category which was two points worse than Ms. Perry and Ms. White.[21] Given that there is a dispute between the subject matter expert and Ms. Lenox over Mr. Murphy's alleged superiority on this point there is a fact issue.

---

[18] JA 545-546.
[19] JA 464: Agency EEOC brief at 7, See *Aka* at 1298 ("courts traditionally treat explanations that rely heavily on subjective considerations with caution.").
[20] JA 424.
[21] JA 350: FQL II.

In addition, a review of Mr. Murphy's application shows that his response to FQL II was devoid of discussing supervisory experience and, instead, discussed his work on software programs from the mid-nineties. JA 343 (Murphy application responding to factor 2). A jury could infer from this that the "three" Mr. Murphy received was deserved and that Ms. Lenox's emphasis on IT was her attempt to unfairly bolster Mr. Murphy's skill set when he missed the overall thrust of the KSAO.

Ms. Lenox also referenced that Mr. Murphy had a "clear understanding" of the "eligibility requirements for the products we provide."[22] This did not set Mr. Murphy apart. Ms. Lenox is referencing FQL one "Knowledge of the Government Headstone and Marker and Presidential Memorial Certificate Programs and VA eligibility requirements."[23] There was nothing unique about Mr. Murphy's knowledge. He received a five for this but so did Ms. Perry and Ms. Lewis. JA 348 showing Schettler's scoring of the candidates for this category.

Ms. Lenox also referenced that Mr. Murphy has an "even temperament." Ms. Lenox considered that "an important trait for this position."[24] However, this totally subjective but allegedly "important" trait

---

[22] JA 424.
[23] JA 300: Perry response.
[24] JA 424.

never made it into the vacancy announcement or the KSAOs, which is required.  The HR Specialist testified that Ms. Lenox's claim in her memo that Mr. Murphy had an "even temperament" should not have had any weight in determining who was best qualified for the job.[25]  According to the HR Specialist these factors are not to be given "any weight" because they are not related to the question of who's most qualified.[26]

The Agency's HR Specialist testified that Ms. Lenox' observation[27] that "although he did not 'interview' as well as some of the others,…" should not have been a relevant consideration because Ms. Lenox did not have the chance to observe everyone else e.g. Wanza Lewis.  Therefore, Ms. Lenox was usurping the role of the Panel and Mr. Murphy was unfairly benefiting from his personal relationship with Ms. Lenox.[28]

Ms. Lenox also noted that Mr. Murphy was a disabled Gulf War veteran.[29]   Ms. Lenox believed that this active duty military experience is "tremendously helpful when dealing with veterans" and others.  Notably, Ms. Lenox does not specify how the military experience would be "tremendously

---

[25] JA 551, 557: Howard Dep,
[26] JA 551, 557.
[27] JA 424.
[28] JA 558 and 560.
[29] JA 425.

helpful." Ms. Lenox allows the reader to speculate as to the reasons it might be "tremendously helpful."

The HR Specialist testified that it was inappropriate for Ms. Lenox to rely on Mr. Murphy's status as a veteran in the selection memo because it was an irrelevant consideration as it was not part of the KSAOs.[30]

Ms. Lenox also attached great significance to the fact that Ms. Murphy had worked as a supervisor in Nashville until 2001. In that regard, Ms. Lenox asserted that Mr. Murphy had "the experience and capability to supervise in a virtual environment."[31]

There are a number of problems with Ms. Lenox's justifications. It must be remembered that the Chief position would be located in Washington. The experience that would be relevant from reading this summary is not being a supervisor in a remote location. What would be relevant is having been a supervisor in city A and supervising an employee who was located in city B.

There is no dispute that Mr. Murphy did not have this latter experience.

Therefore, in emphasizing Mr. Murphy's experience supervising in Nashville while he was present in Nashville Ms. Lenox was advancing a reason that was non-responsive to the question of whether the applicant had

---

[30] JA 559
[31] JA 424.

12

supervised an employee who was in a different location. Reasonable supervisors do not propound non-responsive reasons for their selections.

The fact that working in a remote location was not relevant to the job is supported by the fact that working in a remote location and supervising in a remote location were not skills required by the listed rating factors and KSAOs.[32] Ms. Lenox conceded that if some skill was important to the job, it should be in the KSAOs.[33]

None of the questions Ms. Lenox drafted for the Panel inquired about experience working in a remote location. So neither Mr. Murphy nor any of the other candidates discussed this experience.[34]

The Panel recounts Mr. Murphy as saying he had no direct experience of supervising at an alternate work site.[35] By contrast, Ms. Perry's response showed she monitored the performance of 50 contractors nation-wide.[36] Further, Ms. White actually received that highest point totals for this question (all 5s) whereas Mr. Murphy received two "3's."[37]

---

[32] JA 295.
[33] JA 567-568.
[34] JA 399-407: Murphy Interview Notes showing no question about working at a remote location.
[35] JA 402 at question 2 – Murphy interview notes. JA 405: "no employees at alternate site."
[36] JA 379 – Ms. Perry interview notes.
[37] White interview notes at JA 409, 412, 415.

Ms. Lenox' second point to the effect that "Murphy was the driving force behind implementation of monitoring methods and performance goals for work being performed at MPD remote sites"[38] is puffery as is shown by his response above to question two.

If Mr. Murphy was truly the "driving force" of setting up performance goals for work being performed at remote sites, the jury will question why he is quoted by the panel members as saying he has "no[] direct experience of supervising at alternate work site" and further, why Ms. White received a total of 15 points for this question but Mr. Murphy received only 11 points.[39]

Further, a review of Murphy's application reveals no "driving force" experience.[40]

Defendant's HR Specialist had never seen a selecting official add up the scores of the subject matter expert and the averages given by the panel, as Ms. Lenox had done, and she thought it was odd to do so.[41]  A favorable inference to draw from this was that Ms. Lenox was seeking to use the "best qualified" score that Mr. Murphy had obtained from Mr. Schettler to mask the Panel's criticism of Mr. Murphy.

---

[38] JA 424.

[39] JA 402.

[40] JA 214-JA219.

[41] JA 546-547.

The Agency's HR Specialist thought the Lenox Memo to the file was a "snow job."[42]   According to Ms. Howard the memo was odd as it was not required and she had never seen anything like it before.[43]  This sort of memo is not something that Ms. Lenox has done before or since.[44]

It was unusual for Ms. Lenox not to follow the recommendation of the Panel, which was to hire Ms. Lewis and not hire Mr. Murphy.[45]

Rehearing or rehearing en banc is necessary in these circumstances to consider the argument that the Panel "overlooked or misapprehended."  *Aka v. Washington Hosp. Ctr.*, 124 F.3d 1302 (D.C. Cir. 1997).

WHEREFORE, Appellant respectfully requests the Court grant Appellant's Petition for Rehearing and Suggestion for Rehearing *En Banc*.

Respectfully submitted,

/s/ Michael G. Kane
Michael G. Kane, Bar No. 435288
David R. Cashdan, Bar No. 051342
CASHDAN & KANE, PLLC
1150 Connecticut Avenue, N.W.
Washington, D.C. 20036-4129
Tel. (202) 862-4330
Fax. (202) 862-4331

June 20, 2012

---

[42] JA 555.
[43] JA 553-556.
[44] *Id.*
[45] JA 552.

15

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 20th day of June, 2012, I caused this Petition for Rehearing and Suggestion for Rehearing *En Banc* t to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> David Cotter Rybicki
> OFFICE OF THE U.S. ATTORNEY
> 555 4th Street, NW
> Washington, D.C.  20530
> (202) 353-4024

> *Counsel for Appellee*

I further certify that on this 20th day of June, 2012, I caused the required copies of the Petition for Rehearing and Suggestion for Rehearing *En Banc* to be hand filed with the Clerk of the Court.

/s/ Michael G. Kane
*Counsel for Appellant*

# ADDENDUM

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

No. 11-5141

September Term, 2011

FILED ON: MAY 18, 2012

OLZIE PERRY,

APPELLANT

v.

ERIC K. SHINSEKI, SECRETARY, U.S. DEPARTMENT OF VETERANS AFFAIRS,

APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:09-cv-01149)

———

Before: TATEL and GARLAND, *Circuit Judges*, and SILBERMAN, *Senior Circuit Judge*.

### J U D G M E N T

This appeal was considered on the record from the United States District Court for the District of Columbia and on the briefs filed by the parties. *See* Fed. R. App. P. 34(a)(2); D.C. Cir. R. 34(j). The court has accorded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). It is hereby

**ORDERED** and **ADJUDGED** that the decision of the district court be affirmed.

Appellant Olzie Perry, an African American female, contends that the Department of Veterans Affairs (VA) discriminated against her on the basis of age, race, and sex in violation of both the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 et seq., and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., when it promoted Don Murphy, a forty-one-year-old white male, over her to a managerial position. In response, VA asserts that it hired Murphy for a number of legitimate, nondiscriminatory reasons, including Murphy's experience working at a remote worksite, his demonstrated ability to work with information technology systems, and the fact that he received the highest score of any candidate on his written application.

After full discovery, the district court granted summary judgment to VA. On appeal, Perry contends that the district court erred by analyzing her claim solely to determine whether she was discriminated against "because of" a protected characteristic. Perry argues that, pursuant to 42

U.S.C. § 2000e-2(m) and this court's decision in *Ford v. Mabus*, 629 F.3d 198 (D.C. Cir. 2010), the district court was also required to determine whether a reasonable jury could find that age, race, or sex was a motivating factor in—though not the but-for cause of—the employment decision.

We need not consider this legal argument, however, because nothing in the record suggests that Perry's age, race, or sex played any role whatsoever—whether as a but-for cause or as a motivating factor—in VA's decision. Moreover, as the district court correctly determined, nothing in the record could support a reasonable inference that VA's stated reasons for Murphy's selection were pretextual. Thus, the district court properly granted summary judgment to VA.

The Clerk is directed to withhold the issuance of the mandate herein until seven days after the resolution of any timely petition for rehearing or rehearing en banc. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41.

<u>Per Curiam</u>

**FOR THE COURT:**
Mark J. Langer, Clerk

BY:    /s/
Jennifer M. Clark
Deputy Clerk

## CERTIFICATE OF PARTIES, RULINGS AND RELATED CASES

**Parties:**

      Appellant:  Olzie Perry

      Appellee:   Eric K. Shinseki is his official capacity as head of the Department of Veteran's Affairs.

**Rulings Under Review:**

      The district court's Memorandum Opinion and Order granting summary judgment dated May 10, 2011.

**Related Cases:**

      The case in review has not previously been on review before this Court or any other court.